United States District Court
Northern District of Illinois
Eastern Division

# RECEIVED

APR 2 0 2011

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Geraldine S. Page,
Pro Se

  *Plaintiff,*

  Vs.

MacCormac College by and through
David Grassi individually and in his
capacity as Director of Admissions, and
Greg Reid, individually and in his capacity
as Academic Dean, .

Gary Pawlick, Special Agent  U.S. Department
of Education  Inspector General. individually;
Randolph Wills  Director of Enforcement  U.S.
Department of Education  individually; Debbie
Osgood  Director  U.S. Department of Education
individually; Barbara Wolkowitz, Senior Attorney
U.S. Department of Education  individually.

  *Defendants.*

Docket:
Jury Demand

## 11cv2642
## Judge John W. Darrah
## Magistrate Young B. Kim

## RETALIATION COMPLAINT

1.  This complaint arises out of allegations of retaliation in violation of Section
504 of the Rehabilitation Act of 1973, 29 USC 794; retaliation in violation of the Civil
Rights Act of 1964, 42 USC 2000d; retaliation in violation of the Illinois Human Rights
Act, 775 ILCS 5/6-101; retaliation in violation of Title V of the Americans with
Disabilities Act of 1990, 42 USC 12201; violation of the Administrative Procedure Act, 5
USC 702; The Civil Rights Act of 2004; defamation pursuant to 735 ILCS 5/13-201; and
intentional infliction of emotional distress.

## Jurisdiction and Venue

2.  This Court has jurisdiction of this action under 28 USC 1331, 1343, 1367 and
1391, This action arises under Federal Law of the United States, 29 USC 794, 42 USC
2000d, 42 USC 12001, and 5 USC 551 (13).

3.  Venue in this Court is proper under 28 USC 1391 and 1367, and this Court has
personal jurisdiction over the defendants in this matter because the events giving rise to

this claim occurred, and will occur, in this district. In addition supplemental jurisdiction over Plaintiff's state law claims are so related to Plaintiff's federal claims that they form part of the same case or controversy.

## Plaintiff

4. Plaintiff, Geraldine S. Page, Pro Se, residing at 3101 Emery Lane, Robbins, Illinois, 60472, County of Cook, is, and at all relevant times a citizen of the United States

## Defendants

5. MacCormac College, Inc., located at 29 E. Madison Street, Chicago, Illinois 60602, Cook County, Illinois, in the United States, is a non-for profit, publicly traded corporation operating as a two-year college in which Plaintiff was enrolled in their court reporting program. MacCormac College is a recipient of Federal financial assistance from the U.S. Department of Education and as such, is subject to the laws of Title VI, Section 504 of the Rehabilitation Act , Title V of the Americans with Disabilities Act of 1990, and the Illinois Human Rights Act, all prohibiting retaliation for participating in protected activities

6. David Grassi is employed as the Director of Admission of MacCormac College now and at the time of the occurrence of retaliation against Plaintiff. He is being sued individually, and in his official capacity.

7. Greg Reid is employed as the Academic Dean of MacCormac College, now and at the time of the occurrence of retaliation against Plaintiff, and is head of the Student Status Committee, responsible for re-admission and academic reconsiderations. Denials of re-admissions are attention to the Student Status Committee in care of him. He is being sued individually, and in his official capacity.

8. Randolph Wills is Director of Enforcement of the U.S. Department of Education, Office For Civil Rights, located at 500 West Madison Street, Suite 1475, Chicago, Illinois, 60661, County of Cook, in the United States. He is being sued in his individual capacity.

9. Debbie Osgood is Director of the Chicago office of the U.S. Department of Education, Office For Civil Rights, located at 500 West Madison Street, Suite 1475, Chicago, Illinois, 60661, County of Cook, in the United States. She is being sued in her individual capacity.

10. Barbara Wolkowitz is a Senior Attorney at the U.S. Department of Education, Office For Civil Rights, located at 500 West Madison Street, Suite 1475, Chicago, Illinois, 60661, County of Cook, in the United States. She is being sued in her individual capacity.

11. Gary Pawlak, is employed as a Special Agent for the U.S. Department of Education, Office of Inspector General, located at 111 N. Canal Street, Suite 940, Chicago, Illinois, 60606, and specialized in the area of fraud and abuse in the allocation of federal financial aid to educational institutions. He was contacted by Plaintiff to investigate matters pertaining to her allocation of financial aid to Defendant, MacCormac College. He is being sued individually and in his capacity.

## Statement of Facts

12. Plaintiff attended MacCormac College from the Fall of 1998 to Friday, May 5, 2000, when she was notified by Federal Express mail that she was suspended from the college effective Monday, May 8, 2000. She had been arbitrarily suspended without due process and without stating the reason for the suspension, but merely quoting their misconduct policy, after complaining to Dean of Students, Stacey Cameron, that the denial of her reasonable accommodation request was unjust and that Plaintiff was going to confer with an attorney. Plaintiff was consider a student with a disability as defined under Section 504 of the Americans with Disabilities Act, and Defendant received educational funding from the Department of Rehabilitation services on her behalf while attending MacCoramc College.

13. The Court in *Lerner v. Ravenswood (N.D. Ill. 1999)* held that students are afforded procedural protection, and in *Soglin v Kaufman (418 F.2d 163)* the Courts also affirmed that disciplinary proceedings instituted on the bases of alleged "misconduct" are unconstitutional. Due process was afforded Plaintiff when an incident occurred involving a white student, but not afforded to Plaintiff in her individuality. In addition to the denial of Plaintiff's reasonable accommodation request, and failure of the college to respond to petitions for reinstatement in a reasonable time, Plaintiff decided not to return to the college, and filed a pro se, action against Defendant in November 2005 claiming racial discrimination, and violation of the Americans with Disabilities Act. The suit was dismissed with prejudice after Plaintiff hired an attorney who failed to state a cause of action in his amended complaint three times as instructed by the judge.

14. In April 2009, Plaintiff decided to continue her court reporting studies and applied for readmission to the college. After her May 5, 2000 suspension, Plaintiff's petition for readmission was finally heard after nine months and she was eligible to return, but elected not to under the current administration at that time, fearing she would be subject to the same discriminatory treatment as before. MacCormac's re-admittance policy states that students who were dismissed for misconduct are ineligible to reapply for readmission. Since Plaintiff was never dismissed from the college, she was eligible to apply for readmission, which she did.

15. Plaintiff submitted the application for enrollment and the $20.00 application fee to the admissions department of MacCormac College. Plaintiff received a reply letter from David Grassi, Director of Admissions, dated April 20, 2009, denying her readmission on the basis that she had filed frivolous complaints against the college in

state and federal courts, and for an allege history of disciplinary actions, with the latter accusation being unfounded. There was an incident in which Plaintiff was involved in a verbal altercation with a similarly situated white student whom was also in the court reporting program, and both were suspended for one day following disciplinary proceedings and allowed to return and continue their course of studies; but the term "history" would denote more than one occurrence or offense. Also, re-admittance privileges were never denied Plaintiff prior to her filing suit against MacCormac for racial and disability discrimination.

16. Plaintiff appealed the decision to the Director of Admission, Davis Grassi, to which she received no reply. She then contacted Mr. Grassi by telephone, and asked him what was the reason for the denial of readmission because there is no "history" of disciplinary actions, and according to MacCormac's policy, she was eligible to apply for readmission. Mr. Grassi, simply stated, "for no reason." and hung up the phone.

17. Plaintiff subsequently filed a complaint for retaliation with the U.S. Department of Education, Office for Civil Rights (OCR), and her complaint was opened May 4, 2009 and assigned a complaint number, #05-09-2117. OCR has jurisdiction over matters of discrimination and retaliation in education and is responsible for enforcing Title VI of the Civil Rights Act of 1964 and 504 of the Rehabilitation Act of 1973 which prohibits discrimination based on race and retaliation in programs and activities that receive Federal financial assistance from the U.S. Department of Education. MacCormac College is a recipient of Federal financial aid and is therefore subject to these laws.

18. In June 2009, mediation was agreed upon by both Plaintiff and Defendant and a date was set for June 26, 2009. Two days before the meeting, the mediator, Karen Tambro, called Plaintiff and notified her that mediation would only take place over the phone. Plaintiff disagreed with her decision to conduct a telephone meeting, as that was not the original agreement of the meeting. Therefore, mediation ceased.

19. In July, 2009, MacCormac agreed to resolve the complaint against them for retaliation by entering into a Resolution Agreement with OCR on July 23, 2009, agreeing to reconsider Plaintiffs application without the retaliatory factors, and to provide her with the same right to contest the application decision as provided to other rejected students requesting readmission. This agreement was signed by the Director of Admissions of MacCormac College, David Grassi on July 23, 2009.

20. On July 30, 2009, Plaintiff was again denied readmission to the college based once again, on an allege history of disciplinary actions with omission of the retaliatory factors. Plaintiff requested a copy of her disciplinary file from Defendant to examine the contents of her file herself to see if there was any evidence to substantiate their claim of an allege history of disciplinary actions. MacCormac never responded to Plaintiff's request for access to her disciplinary file.

21. At the advice of Barbara Wolkowitz, designated contact person and one of the

investigators assigned to investigate Plaintiff's complaint at OCR, she was told to follow the grievance procedure according to MacCormac College's handbook, which is a four-step grievance procedure process.

22.  In Step One of the grievance procedure, Plaintiff sent a letter of petition to David Grassi dated August 6, 2009 requesting reconsideration of her denial for readmission and requesting her disciplinary file. Grassi never responded. Plaintiff filed a complaint with the FERPA office in Washington D.C. and only then after being contacted by FERPA and advising MacCormac of Plaintiff's rights under FERPA law, did MacCormac grant Plaintiff access to her file, through their attorney, Steven Filipowski. Plaintiff was allowed to view her file, but was denied her request to receive copies of her file, which did not show any history of disciplinary actions as MacCormac claimed, other than the incident with the white student. Plaintiff notified Barbara Wolkowitz of OCR of MacCormac's inaction to respond to her Step One petition.

23.  On November, 11, 2009, some three months after the submission of the first petition, Plaintiff received a letter from MacCormac College Director of Admissions David Grassi, advising her to proceed to Step Two of the grievance procedure and petition to the Academic Dean, Greg Reid, because the person involved in the initial petition was not at the college that term, although the person he is referring to is himself. Plaintiff did submit a Step Two petition to the Academic Dean, Greg Reid and he responded in a November 19, 2009 letter offering to meet to discuss readmission.

24.  By that time, Plaintiff was recuperating after being hospitalized in October of that year for stress and emotional issues stemming from this matter, and requested that the meeting take place after the new year. Plaintiff had wanted to return to MacCormac in the Fall, but their continued denial of her readmission did not allow for that. She enrolled at Chicago State University instead, but had to drop because of her hospitalization brought on by the stress of the situation with MacCormac regarding her denial of readmission.

25.  In January, 2010, Plaintiff spoke with Defendant, Greg Reid and he offered to meet with her at their attorneys office on one of two days the first week of January. Plaintiff could not meet those days, and was not offered an alternative day to meet; therefore, the meeting was postponed until the following month.

26.  By February, 2010 Defendant Greg Reid offered to meet with Plaintiff at MacCormac's attorney's office on one of two days in early February, insisting these were the only days their attorney would be available. Plaintiff began to feel uncomfortable with the situation, because she had been told that this was an informal meeting and could not understand why the meeting would be taking place in their attorneys office. Plaintiff also wanted to have in her possession copies of her disciplinary file so that she may dispute any allegations during the meeting. Since MacCormac, by and through their attorney, denied her copies of her file in their possession, Plaintiff informed Greg Reid that she would not consent to a meeting until she received her FOIA request from OCR

for her disciplinary file and consulted an attorney for guidance. Greg Reid agreed.

27. However, in a letter dated March 2, 2010 from Greg Reid, he claimed that Plaintiff had missed several scheduled meetings in January and February, which is false, and that the last opportunity to meet with him to discuss this matter would be March 25, 2010 at the Chicago Cultural Center at 5:00 p.m. In his letter, he indicated that Plaintiff was to confirm in writing five days prior to the meeting that she would attend. Plaintiff responded by refuting those claims of missing scheduled meetings and re-iterated that she had not committed to any meeting, and was waiting for the FOIA information from OCR. In the meantime, she had spoken with an attorney from Equip For Equality whom advised her that someone of legal age could accompany her to the meeting as a reasonable accommodation under ADA. Defendant Reid had insisted that she was not allowed to bring anyone (lawyer, representative, friend, etc.) to the meeting because it was an informal meeting, although, their lawyers would be present. He had also advised Plaintiff that the meeting could not be tape recorded, as she had requested.

28 Once Plaintiff received her FOIA information from OCR, she sent a letter to Greg Reid dated March14, 2010 confirming the meeting on March 25. Plaintiff also notified Barbara Wolkowitz of OCR by e-mail of the meeting and called Greg Reid to confirm as well.

29. On March 21, 2010, Plaintiff called Greg Reid to confirm the Step Two meeting. He said he was in a meeting and that he would call her back. He never did. The following day, Plaintiff called MacCormac College to speak with Greg Reid and the receptionist, Andrea, advised Plaintiff that she was instructed not to take any messages for Mr. Reid, or forward any calls to his voice mail. Plaintiff notified Barbara Wolkowitz of OCR asking her to contact Mr. Reid and informed her of how Plaintiff was not allowed to speak to Mr. Reid or leave a message for him. She advised Plaintiff o send him an e-mail. Plaintiff did as such, but Mr. Reid never responded to the e-mail.

30. On March 24, Plaintiff sent an e-mail to Mr. Reid to confirm, again, the March 25 meeting. He did not respond. On March 25, at approximately 8:36 a.m., the day of the scheduled meeting, Plaintiff received a call from Barbara Wolkowitz of OCR and informed her that Greg Reid called her to state that the meeting had been canceled, claiming that Plaintiff had not notified him by mail five days prior to the meeting. On that same day, Plaintiff received a letter via Federal Express stating that the meeting had been canceled because of Plaintiff's alleged failure to notify him in writing five days prior to the meeting to confirm the meeting, although he acknowledge in the letter that Plaintiff had notified him verbally. He then went on to state that the file on her grievance procedure was closed, preventing her from continuing onto Step Three and Four of the grievance procedure.

31. Plaintiff notified Barbara Wolkowitz of OCR about the willful actions of Greg Reid and that his cancellation of their meeting and the closing her file was a direct violation of the Resolution Agreement. Paragraph 2 of the Agreement clearly states that

the college was to afford Plaintiff the opportunity to contest their decision to deny Plaintiff's readmission as afforded other rejected applicants. OCR took no action.

32. Plaintiff then called the customer relations division of OCR in Washington D.C. for assistance and was advised by Authur Goldman in writing that if she felt that MacCormac had violated the Resolution Agreement, then she should file a complaint for non-compliance. Plaintiff then filed a complaint for non-compliance and submitted it to OCR, whom opened the complaint for non-compliance on May 6, 2010 and assigned it a complaint number 05-10-2117 then was subsequently closed by Director Debbie Osgood claiming that it was opened "in error" and that any allegations for non-compliance would be addressed during the monitoring of the implementation of the resolution agreement. The CMS report of OCR pertaining to Plaintiff's complaint shows no indication of monitoring reports submitted to OCR by MacCormac or complaints of non-compliance. The CMS report is documented as a complaint based solely on race, not race and disability.

33. Against the advice of Barbara Wolkowitz of OCR, Plaintiff proceeded to Step Three of the grievance procedure, which is to petition the Student Status Committee in care of Greg Reid, Academic Dean, and the same person whom Plaintiff were to meet with on March 25, who canceled the Step Two meeting. This Step Three of Four of the grievance procedure was to petition not only the accusation of an allege history of disciplinary actions which prevailed Plaintiff from re-admittance, but also for canceling the March 25 meeting and closing her grievance file. To ensure delivery of the Step Three petition, it was sent by certified mail and confirmed delivery on August 23, 2010. Greg Reid never responded to the petition, and OCR took no action when it was reported to Barbara Wolkowitz, Randolph Wills and Debbie Osgood of OCR.

34. Plaintiff then petitioned the Interim President of the college, John Lanigan, which was the last and final step of the grievance procedure, to contest the denial of readmission, contest the claim of allege history of disciplinary actions, to contest the refusal of Greg Reig to hear her Step Three Petition and the closing of her disciplinary file. The Step Four petition, sent by certified mail, and was refused by MacCormac College on November 15 and 18, 2010, confirmed by the US Postal Serive tracking system and verified by the carrier, whom stated that they were instructed not to accept mailings from Plaintiff.

35. Proof of MacCormac's refusal to accept Plaintiff's Step Four Petition twice was forwarded to Barbara Wolkowitz of OCR, whom then advised MacCormac to hear her Step Three petition. Plaintiff objected, and insisted that the only way that she would consider any further discussion pertaining to her admission to the college is if OCR would play an active role in ensuring MacCormac compliance with the terms of the resolution agreement. Plaintiff requested that a meeting be held at the offices of OCR between Plaintiff and Defendant with OCR as an active participant. OCR declined to be involved.

36. MacCormac, however, decided to hear Plaintiff's Step Three petition on December 14, 2010, despite Plaintiff's object, some four months after its initial submission on August 23, 2010, and after Defendants refused to accept and acknowledge her Step Four petition submitted for acceptance by the US Postal service on November 15 and November 18, 2010, in an effort to make it seem as though they were complying with the terms of the resolution agreement.

37. MacCormac, again, denied Plaintiff's readmission to the college, but not for the reasons stated previously. The reason for Plaintiff's denial of readmission this time was for academic reasons instead, citing poor grades, and missing deadlines. These allegations are all pretext -- as is with the allegation of alleged history of disciplinary actions -- because Plaintiff has a copy of her transcript which clearly shows that her GPA was 2.0 when she last attended MacCormac College. Plaintiff's GPA would have been significantly higher, had she not been suspended; finals were only two weeks away and since she was placed on suspension, she was not present to take her final exams in addition to not being able to produce regular course work for a grade. She received F-grades in all of her classes for that quarter as a result of the arbitrary suspension of May 5, 2000. There was no mention of the allege history of disciplinary actions in their current decision to deny Plaintiff readmission to the college, as this was the context of the Step Three Petition Plaintiff submitted and those allegations were not addressed.

38. Plaintiff requested that OCR make a determination of non-compliance regarding MacCormac as of December 2010. According to the Administrative Procedure Act, 5 USC 702, OCR should make every effort to ensure compliance of the resolution agreement or make a ruling regarding their non-compliance in a reasonable amount of time. It has been nearing two years without any resolution, and it is clear by the pre-textual statements and retaliatory behavior of MacCormac that they do not intend to allow Plaintiff to be readmitted to the college because of their initial reason: Filing complaints against them for racial and disability discrimination, a protected activity, which Plaintiff legally had a right to participate in because she reasonably believed in good faith that she had been discriminated against.

39. For these reasons, Plaintiff takes her cause to Court to seek a remedy and resolution that she did not receive with the filing of her complaint with OCR. In a letter discovered in a recent FOIA request as of February 2011, Gary Pawlick, Special Agent of the Inspector Generals Office of the U.S. Department of Education is quoted as saying that "he recognizes that she (Plaintiff) suffers from mental problems and he will not respond any further to her request." Plaintiff had spoken with Mr. Pawlick regarding her financial aid and wanted to know if MacCormac College were entitled to keep the funds after their discriminatory actions against Plaintiff on May 5, 2000. Plaintiff had informed Mr. Pawlick that she was a student with a disability and had described the nature of her bi-polar condition in detail.

40. This statement, made by an official of the United States Department of Education, Office of Inspector General, is not only rude, but a discriminatory remark,

indicating that he will not communicate with Plaintiff because she has a mental illness (disability), and leads Plaintiff to believe that this opinion has permeated through the OCR office as well, affecting their willingness to investigate Plaintiff claims of retaliation and non-compliance of the Resolution Agreement. Plaintiff had complained of non-compliance by MacCormac to the Director of the Chicago office, Debbie Osgood, and the Director of Enforcement, Randolph Wills and the Assistant Secretary, Russlyn Ali in e-mail regarding MacCormac's non-compliance of the Resolution Agreement with no action taken, which is considered inaction pursuant to 5 USC 551(13) of the Administrative Procedure Act, 5 USC 702. Therefore, Plaintiff is forced to take this action to a Federal Court for relief.

41. As a result of Defendants MacCormac College, Greg Reid and David Grassi of MacCormac College intentional retaliation against Plaintiff for complaining of discrimination when she was a student previously at MacCormac College and their retaliatory procedures and practices, Plaintiff suffered humiliation, emotional distress, pain and suffering, the loss of enjoyment of life as a consequence of her application being rejected, and after learning of how Gary Pawlick communicated to MacCormac College that she had a mental problem and he would no longer respond to her requests.

42. Defendants MacCormac College, Greg Reid and David Grassi of MacCormac College demonstrated malice and reckless indifference when they showed a blatant disregard for the legal right Plaintiff's prohibition against retaliation in accordance with the laws mentioned in this complaint prohibiting retaliation for participation in a protected activity with a reasonably good faith belief that the practice of discrimination was unlawful by filing complaints against them for discrimination.

43. Defendants MacCormac College, Greg Reid and David Grassi of MacCormac College were and are aware of these laws, as they are a conditional when they apply for and receive Federal financial aid from the U.S. Department of Education. In addition, the complaint Plaintiff filed with OCR put Defendants MacCormac College, Greg Reid and David Grassi on notice that they are subject to the anti-retaliation provisions under Title VI of the Civil Rights Act of 1964 and Section 504 of the Rehabilitation Act of 1973

44. Defendants MacCormac College, Greg Reid and David Grassi of MacCormac College willfully, recklessly and maliciously denied her readmission based on defamatory falsehoods and for participation in protected activities; negligently, willfully, maliciously, and intentionally disregarded her petitions for readmission by failing to afford her the opportunity to contest their decision pursuant to the Resolution Agreement by failing to respond to submitted petitions; maliciously, recklessly intentionally, and willfully canceling scheduled meetings; willfully, maliciously, recklessly and intentionally closing her disciplinary file in violation of the Resolution Agreement; and willfully, maliciously, intentionally, and recklessly rejecting her Step Four petition to the president of the college. MacCormac engaged in grossly negligent conduct toward Plaintiff.

45. As a result of Defendants MacCormac College, Greg Reid and David Grassi of MacCormac College grossly negligent, retaliatory conduct, Plaintiff could not resume and complete her court reporting training at MacCormac and proceed with her plan to become a court reporter. MacCormac College is the only college which teaches court reporting that is accessible by public transportation in the Chicagoland area. In addition, Plaintiff learned her transcribing theory at MacCormac College (Phoenix Theory) and wished to continue it there.

46. Plaintiffs desire to become a court reporter was based on the fact that the conditions of her disability made it difficult to hold a nine-to-five job. As a court reporter, she could work as a freelance reporter and work when she was well, and not work when her condition prevented her from doing so without jeopardizing her job security, but still make a substantial income to support herself and her three children. Plaintiff, at that time and at the present time, is receiving social security disability income to sustain herself, but wished to be able to support herself and be productive in the work force in the capacity of a court reporter, in which she excelled in as a student.

47. Court reporting was also helpful to Plaintiff's cognitive functioning and gave her a sense of self-worth, all which was stripped of her by the malicious conduct of MacCormac College and their dealings with her, by retaliating against her by denying her readmission to the college for participating in protected activities, failing to implement and follow through on their own grievance procedure policy, and failing to adhere to the Resolution Agreement with OCR on Plaintiffs behalf.

48. Plaintiff repeats and re-alleges the allegations of paragraphs 1-47 as if fully set forth herein:

## First Count:
## Retaliation in violation Title VI of the Civil Rights Act of 1964
## MacCormac College, Grassi and Reid

49. Plaintiff reasonably and in good faith believed that she had been discriminated against when she filed a lawsuit against MacCormac College in 2005 for race and disability discrimination and violation of ADA that she had been discriminated against because she was denied due process procedure when she was arbitrarily suspended on May 5, 2000 as was afforded her when an incident with a white student had taken place. Plaintiff reasonably and in good faith believed that she had been discriminated against under ADA when her reasonable accommodation request for scheduling adjustments were denied without consideration.

50. Defendant MacCormac College was aware that Plaintiff filed suit against them in State and Federal Court and other administrative agencies because they were served to appear in court, and they acknowledge that fact in writing in their April 20, 2009 letter denying Plaintiffs readmission.

51. As a result of Plaintiff filing a lawsuit against Defendant in state and federal court and other regulatory agencies, Defendant denied Plaintiff re-admittance to the college based on this fact, which was put in writing, and concocted a defamatory falsehood of an allege history of disciplinary action prevailing Plaintiff from returning to the college, a reason for denial of readmission, that later in the grievance procedure changed to academic reasons, although Plaintiff held a GPA of 2.0 when she last attended the college.

52. Defendants handbook states that students who were dismissed from the college for misconduct were ineligible to reapply for admission to the college. Plaintiff had never been dismissed for misconduct, she had been arbitrarily suspended. In addition, at no time prior to the Plaintiff filing complaints and lawsuits for discrimination had Defendant ever told Plaintiff that she was ineligible to return to the college because of dismissal, which had never been imposed on Plaintiff. Plaintiff was eligible to return to the college after the suspension period but chose not to at the time. Defendants showed a willful and reckless disregard for Plaintiff's civil rights.

Second Count:
Retaliation in violation of 504 of the Rehabilitation Act of 1973
MacCormac College, Grassi and Reid

53. Plaintiff reasonably and in good faith believed that she had been discriminated against when she filed a lawsuit against MacCormac College in 2005 for race and disability discrimination and violation of ADA that she had been discriminated against because she was denied due process procedure when she was arbitrarily suspended on May 5, 2000 as was afforded her when an incident with a white student had taken place. Plantiff reasonably and in good faith believed that she had been discriminated against under ADA when her reasonably accommodation request for scheduling adjustments were denied without consideration.

54. Defendant MacCormac College was aware that Plaintiff filed suit against them in State and Federal Court and other administrative agencies because they were served to appear in court, and they acknowledge that fact in writing in their April 20, 2009 letter denying Plaintiffs readmission.

55. As a result of Plaintiff filing a lawsuit against Defendant in state and federal court and other regulatory agencies, Defendant denied Plaintiff re-admittance to the college based on this fact, which was put in writing, and concocted a defamatory falsehood of an allege history of disciplinary action prevailing Plaintiff from returning to the college, a reason for denial of readmission, that later in the grievance procedure changed to academic reasons, although Plaintiff held a GPA of 2.0 when she last attended the college.

56. Defendants handbook states that students who were dismissed from the college for misconduct were ineligible to reapply for admission to the college. Plaintiff

had never been dismissed for misconduct, she had been arbitrarily suspended. In addition, at no time prior to the Plaintiff filing complaints and lawsuits for discrimination had Defendant ever told Plaintiff that she was ineligible to return to the college because of dismissal, which had never been imposed on Plaintiff. Plaintiff was eligible to return to the college after the suspension period but chose not to at the time. Defendants showed a willful and reckless disregard for Plaintiff's civil rights.

Third Count:

Retaliation in violation of the Illinois Human Rights Act

MacCormac College, Grassi and Reid

57. Plaintiff reasonably and in good faith believed that she had been discriminated against when she filed a lawsuit against MacCormac College in 2005 for race and disability discrimination and violation of ADA that she had been discriminated against because she was denied due process procedure when she was arbitrarily suspended on May 5, 2000 as was afforded her when an incident with a white student had taken place. Plaintiff reasonably and in good faith believed that she had been discriminated against under ADA when her reasonably accommodation request for scheduling adjustments were denied without consideration.

58. Defendant MacCormac College was aware that Plaintiff filed suit against them in State and Federal Court and other administrative agencies because they were served to appear in court, and they acknowledge that fact in writing in their April 20, 2009 letter denying Plaintiffs readmission.

59. As a result of Plaintiff filing a lawsuit against Defendant in state and federal court and other regulatory agencies, Defendant denied Plaintiff re-admittance to the college based on this fact, which was put in writing, and concocted a defamatory falsehood of an allege history of disciplinary action prevailing Plaintiff from returning to the college, a reason for denial of readmission, that later in the grievance procedure changed to academic reasons, although Plaintiff held a GPA of 2.0 when she last attended the college.

60. Defendants handbook states that students who were dismissed from the college for misconduct were ineligible to reapply for admission to the college. Plaintiff had never been dismissed for misconduct, she had been arbitrarily suspended. In addition, at no time prior to the Plaintiff filing complaints and lawsuits for discrimination had Defendant ever told Plaintiff that she was ineligible to return to the college because of dismissal, which had never been imposed on Plaintiff. Plaintiff was eligible to return to the college after the suspension period but chose not to at the time. Defendants showed a willful and reckless disregard for Plaintiff's civil rights.

Fourth Count:
Retaliation in violation of Title V of the Americans With Disabilities Act 0f
1990
MacCormac College, Grassi and Reid

61. Plaintiff reasonably and in good faith believed that she had been discriminated against when she filed a lawsuit against MacCormac College in 2005 for race and disability discrimination and violation of ADA that she had been discriminated against because she was denied due process procedure when she was arbitrarily suspended on May 5, 2000 as was afforded her when an incident with a white student had taken place. Plaintiff reasonably and in good faith believed that she had been discriminated against under ADA when her reasonably accommodation request for scheduling adjustments were denied without consideration.

62. Defendant MacCormac College was aware that Plaintiff filed suit against them in State and Federal Court and other administrative agencies because they were served to appear in court, and they acknowledge that fact in writing in their April 20, 2009 letter denying Plaintiffs readmission.

63. As a result of Plaintiff filing a lawsuit against Defendant in state and federal court and other regulatory agencies, Defendant denied Plaintiff re-admittance to the college based on this fact, which was put in writing, and concocted a defamatory falsehood of an allege history of disciplinary action prevailing Plaintiff from returning to the college, a reason for denial of readmission, that later in the grievance procedure changed to academic reasons, although Plaintiff held a GPA of 2.0 when she last attended the college.

64. Defendants handbook states that students who were dismissed from the college for misconduct were ineligible to reapply for admission to the college. Plaintiff had never been dismissed for misconduct, she had been arbitrarily suspended. In addition, at no time prior to the Plaintiff filing complaints and lawsuits for discrimination had Defendant ever told Plaintiff that she was ineligible to return to the college because of dismissal, which had never been imposed on Plaintiff. Plaintiff was eligible to return to the college after the suspension period but chose not to at the time. Defendants showed a willful and reckless disregard for Plaintiff's civil rights.

Fifth Count:
Violation of Administrative Procedure Act 5 USC 702
Defendants Wolkowitz, Wills, and Osgood

65. Under the Administrative Procedure Act (5 USC 702), Defendants of The United States Department of Education, Office for Civil Rights, (OCR), Barbara Wolkowitz, Director Debbie Osgood, and Director of Enforcement Randolph Wills are responsible for ensuring compliance and enforcement of the Resolution Agreement

entered into with MacCormac regarding the retaliation complaint filed by Plaintiff with OCR.

66. The aforementioned Defendants violated this Act pursuant to 5 USC 551(13) by their failure to implement 5 USC 702 with agency inaction by failing to make an agency rule, order, sanction, or relief in a reasonable time frame, by not responding to Plaintiffs complaints of non-compliance of the Resolution Agreement by Defendant MacCormac College, failure to investigate complaints for non-compliance, willfully and intentionally closing complaints for non-compliance without investigation, and failure to document incidents and reports of non-compliance on the part of MacCormac College and failure to come to a conclusion of the matter of retaliation against Plaintiff and failure to investigate complaints for refusal of MacCormac's refusal to accept Plaintiff's Step Four petition.

67. Defendants of OCR failure to act in accordance with the Administrative Procedure Act resulted in Plaintiff receiving no relief from MacCormac College continued willful, malicious and intentional retaliatory actions towards Plaintiff for participating in protected activities. Defendants showed a willful and reckless disregard for Plaintiff's civil rights.

## Sixth Count:
## Defamation of Character against Gary Pawlick

68. In a letter to former president of MacCormac College, Leo Loughead to MacCormac College business manager Matthew Gawenda, dated September 6, 2006 which Plaintiff discovered during a FOIA request completed in February 2011, Gary Pawlick, Special Agent for the US Department of Education, Office of Inspector General is quoted by Mr. Gawenda by stating: "He recognizes that she suffers from some mental problems and he will not respond any further to her request." This statement is in writing and is defamatory and discriminatory.

## Seventh Count:
## Intentional Infliction of Emotional Distress
## Defendants Grassi and Reid

69. Defendants David Grassi, and Greg Reid of MacCormac College conduct was extreme and outrageous in maliciously claiming a defamatory falsehood that Plaintiff had a history of disciplinary actions barring her reentry to the college, then abandoning that theory and claiming their reason for denying her re-admittance were for academic reasons, even though she last attended the school with a GPA of 2.0.

70. In addition to their actions of not adhering to their own grievance procedure policy and the stipulation of the resolution agreement, their outright rejection of Plaintiff's Step Four Petition cause Plaintiff much emotional distress to the point that she sank into a deep depression. She had been hospitalized several times during the two

years of OCR involvement. MacCormac know of Plaintiffs condition and showed a disregard for the effect that their behavior would have on her mental and emotional health. Defendants conduct is a direct and proximate cause of Plaintiffs condition deteriorating and her emotional distress as she increasingly because upset and agitated and stress out, suffering from insomnia, severe depression, and loss of appetite, vertigo, as well as mental anguish.

## Eight Count:
### Intentional Infliction of Emotional Distress
### Defendants Wolkowitz, Wills and Osgood

71. Senior Attorney Barbara Wolkowitz, Director Debbie Osgood, and Director of Enforcement Randolph Wills of The United States Department of Education failure to conduct prompt investigations of non-compliance, failure to enforce compliance of the Resolution Agreement, failure to document the events surrounding the complaint process, failure to correctly document the complaint in the CMS reporting system, and failure to enforce and/or ensure compliance with the anti-retaliation provisions of Title VI and Section 504 was extreme and outrageous, as that is a part of their official duty in accordance with the Administrative Procedure Act.

72. Defendants Wolkowitz, Wills, and Osgood knew that Plaintiff suffered from a bi-polar condition, as they have access to Plaintiff's medical records, and they were informed of her hospitalization as a result of the stress from dealing with the inaction of OCR and MacCormac and both blatant disregard of her rights. She experienced insomnia, severe depression, loss of appetite, vertigo as well as mental anguish.

73. Their conduct is a direct and proximate cause of Plaintiffs deteriorating condition and cause of emotional distress

## Ninth Count:
### Violation of the Civil Rights Act of 2004
### MacCormac College, Grassi and Reid

74. Plaintiff reasonably and in good faith believed that she had been discriminated against when she filed a lawsuit against MacCormac College in 2005 for race and disability discrimination and violation of ADA that she had been discriminated against because she was denied due process procedure when she was arbitrarily suspended on May 5, 2000 as was afforded her when an incident with a white student had taken place. Plaintiff reasonably and in good faith believed that she had been discriminated against under ADA when her reasonably accommodation request for scheduling adjustments were denied without consideration.

75. Defendant MacCormac College was aware that Plaintiff filed suit against them in State and Federal Court and other administrative agencies because they were

served to appear in court, and they acknowledge that fact in writing in their April 20, 2009 letter denying Plaintiffs readmission.

76. As a result of Plaintiff filing a lawsuit against Defendant in state and federal court and other regulatory agencies, Defendant denied Plaintiff re-admittance to the college based on this fact, which was put in writing, and concocted a defamatory falsehood of an allege history of disciplinary action prevailing Plaintiff from returning to the college, a reason for denial of readmission, that later in the grievance procedure changed to academic reasons, although Plaintiff held a GPA of 2.0 when she last attended the college.

77. Defendants handbook states that students who were dismissed from the college for misconduct were ineligible to reapply for admission to the college. Plaintiff had never been dismissed for misconduct, she had been arbitrarily suspended. In addition, at no time prior to the Plaintiff filing complaints and lawsuits for discrimination had Defendant ever told Plaintiff that she was ineligible to return to the college because of dismissal, which had never been imposed on Plaintiff. Plaintiff was eligible to return to the college after the suspension period but chose not to at the time. Defendants showed a willful and reckless disregard for Plaintiff's civil rights.

## Relief

WHEREFORE, Plaintiff request judgment:

A.    Declaring that Defendants violated her rights under 29 USC 794, 42 USC 2000d, 775 ILCS 5/6-101, 42 USC 12201, 5 USC 551(13), and the Civil Rights Act of 2004,

B.    Order from the Presiding Judge for Judicial Review of OCR's complaint process;

C.    Award Plaintiff compensatory, punitive, non-pecuniary, and monetary damages in an amount to be proven at trial;

D.    Injunctive relief;

E.    Award of attorneys' fees and cost, if applicable;

E.    Providing any other relief that is appropriate and just.

Respectfully submitted,

*Geraldine S. Page*

Geraldine S. Page
Plaintiff Pro Se
708-897-0151